```
           IN THE UNITED STATES DISTRICT COURT
        FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA      )
                              )
           v.                 )        1:06CR203-1
                              )
STEPHON JUNIOR MCCAIN         )
```

<u>**MEMORANDUM OPINION AND ORDER**</u>

THOMAS D. SCHROEDER, District Judge.

　　Before the court is *pro se* Defendant Stephon Junior McCain's motion for compassionate release. (Doc. 52.) The Government responded in opposition. (Doc. 55.) McCain replied (Doc. 57) and filed a supplement (Doc. 59). For the reasons set forth below, McCain's motion will be denied.

**I.   BACKGROUND**

　　In September 2006, McCain pleaded guilty to one count of possession with intent to distribute 50 grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). (Doc. 13; <u>see also</u> Doc. 1.) At sentencing, the court found that he qualified as a career offender under U.S. Sentencing Guideline § 4B1.1 due to several prior convictions for drug-related felonies (Doc. 31-1 ¶ 19) and applied the career offender enhancement (<u>see</u> Doc. 28). The court then sentenced McCain to a guideline sentence of 288 months of imprisonment followed by ten years of supervised release. (Doc. 20.) Currently, McCain is incarcerated at FCI Beckley in Beaver, West Virginia, and has an expected release date

of May 21, 2027. (Compare Doc. 55 at 3 with Fed. Bureau of Prisons, Find an Inmate, at https://www.bop.gov/inmateloc/ (listing McCain's release date as May 21, 2026) (last accessed November 6, 2023).)

In July 2010, McCain filed a motion pursuant to 18 U.S.C. § 3582(c)(2) seeking to reduce his sentence through retroactive application of the sentencing guidelines for crack cocaine. (Doc. 21.) The court denied the motion because McCain, having been sentenced as a career offender, was not eligible for a reduction under the statute or Guideline § 1B1.10. (Doc. 28.) Roughly four years later, in October 2015, McCain filed another motion to reduce his sentence pursuant to § 3582(c)(2), this time arguing that a reduction of his sentence was warranted in light of the 2014 Retroactive Drug Amendment. (Doc. 29.) The court again denied the motion, concluding that he was "not eligible for a sentencing reduction pursuant to U.S. Sentencing Guideline § 1B1.10 insofar as his sentence was derived as a result of his status as a career offender under the U.S. Sentencing Guidelines." (Doc. 33.)

In March 2019, McCain filed a motion to reduce his sentence pursuant to the First Step Act of 2018 ("First Step Act"), Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222. (Doc. 35.) The court agreed with McCain that his conviction qualified as a covered offense under the First Step Act and reduced his supervised release term to eight years. (Doc. 42.) However, the court declined to

2

exercise its discretion to reduce McCain's custodial sentence,
noting that it had considered the sentencing factors under 18
U.S.C. § 3553(a), the parties' arguments, McCain's lack of a
disciplinary record in prison, and McCain's extensive criminal
history. (Doc. 43.) McCain appealed the court's decision, and
the Fourth Circuit affirmed. See United States v. McCain, 801 F.
App'x 174, 175 (4th Cir. 2020) (per curiam) (unpublished). Shortly
thereafter, McCain filed a motion for reconsideration with this
court (Doc. 50), which was denied (Doc. 51).

McCain now moves for a sentence reduction under what has come
to be known as the "compassionate release" provisions of 18 U.S.C.
§ 3582(c)(1)(A). (Doc. 52.) That statute allows district courts
to lower a defendant's sentence if, among other requirements,
"extraordinary and compelling reasons" support a reduction that is
consistent with the applicable policy statements issued by the
Sentencing Commission. See United States v. Bond, 56 F.4th 381,
383 (4th Cir. 2023). In bringing the motion, McCain invokes the
First Step Act, his post-sentencing rehabilitative efforts, and
the COVID-19 pandemic in combination with his obesity. The
Government filed a response opposing McCain's motion for early
release (Doc. 55), and McCain filed a reply (Doc. 57) along with
a supplementary brief (Doc. 59).

3

## II. ANALYSIS

### A. Legal Standard

"Federal law has long authorized courts to reduce the sentences of federal prisoners facing extraordinary health conditions," but prior to the passage of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, district courts could grant such reductions only upon a motion by the Director of the Bureau of Prisons ("BOP") pursuant to 18 U.S.C. § 3582(c)(1). United States v. Beck, 425 F. Supp. 3d 573, 577-78 (M.D.N.C. 2019). However, Congress amended § 3582(c)(1) when it passed the First Step Act. Pertinent here, the First Step Act added a provision to § 3582(c)(1) that allows a defendant to bring a motion for compassionate release directly in a district court after either "the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

If the defendant has met the exhaustion requirement, he must either (1) have "extraordinary and compelling reasons" for a compassionate release or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that he is not a danger to the public. Id. The defendant bears the burden of establishing that extraordinary and

4

compelling reasons justify his release.  See United States v. Newton, 996 F.3d 485, 488 (7th Cir. 2021); United States v. Hargrove, 30 F.4th 189, 195 (4th Cir. 2022).  Further, while a court need not address every argument raised by a defendant, it must fully explain its decision in light of the particular circumstances of each case.  United States v. Osman, No. 21-7150, 2022 WL 485183, at *2 (4th Cir. Feb. 17, 2022) (per curiam) (unpublished)[1] (citing United States v. High, 997 F.3d 181, 188-89 (4th Cir. 2021)).  Additionally, a court, in considering a reduction in sentence pursuant to § 3582(c)(1)(A), must consult the sentencing factors set forth in 18 U.S.C. § 3553(a) and may grant the reduction only if it is "consistent with [the] applicable policy statements" issued by the United States Sentencing Commission.  18 U.S.C. § 3582(c)(1)(A).

As recently amended, United States Sentencing Guideline § 1B1.13(a) essentially reiterates the requirements of 18 U.S.C § 3582(c)(1)(A), with the additional requirement that a defendant not be "a danger to the safety of any other person or to the community."  U.S.S.G. § 1B1.13(a)(2) (U.S. Sentencing Commission 2023); see also Beck, 425 F. Supp. 3d at 578.  Section 1B1.13(b) then provides a non-exhaustive list of examples of extraordinary

---

[1] Unpublished opinions of the Fourth Circuit are not precedential but can be cited for their persuasive, but not controlling, authority.  See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006).

and compelling reasons to grant a compassionate release. The four enumerated reasons are (1) medical circumstances of the defendant; (2) age of the defendant; (3) family circumstances of the defendant; and (4) defendant as a victim of abuse. U.S.S.G. § 1B1.13(b). Section 1B1.13(b)(5) then provides a catch-all for "any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." Section 1B1.13(b)(6) also provides that a court may consider a change in the law for defendants who have served at least 10 years in determining "whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances." Finally, section 1B1.13(d) states that rehabilitation of the defendant is not alone an extraordinary and compelling reason, but it may be considered along with other circumstances.

Courts maintain broad discretion in what evidence they may consider on a motion to reduce a sentence under the First Step Act. Concepcion v. United States, 142 S. Ct. 2389, 2403-04 (2022). However, courts do not have unfettered jurisdiction or discretion

6

to modify criminal sentences.  See United States v. Goodwyn, 596 F.3d 233, 235 (4th Cir. 2010) ("The law closely guards the finality of criminal sentences against judicial change of heart.") (internal quotations omitted).  A court may modify a sentence only when a provision in the Federal Rules of Criminal Procedure or a statute, such as 18 U.S.C. § 3582(c), expressly permits it to do so.  Even then, § 3582(c) is appropriately invoked only in unusual cases, or, as the Fourth Circuit phrases it, the "most grievous cases."  United States v. McCoy, 981 F.3d 271, 287 (4th Cir. 2020); see Osman v. United States, Crim. No. 2:10-cr-57-5, 2023 WL 3765246, at *4 (E.D. Va. June 1, 2023) ("The Senate Judiciary Committee report on the Sentencing Reform Act explained that compassionate release would address 'unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances.'" (citations omitted)).  It is not a vehicle for repeated reconsideration of sentences as a way to circumvent the general rule of finality.  See Goodwyn, 596 F.3d at 235-36.  Nor is it a vehicle to collaterally attack a federal conviction or sentence.  United States v. Ferguson, 55 F.4th 262, 270 (4th Cir. 2022).

**B.  Exhaustion**

As a preliminary matter, the parties agree that McCain has fully exhausted his administrative remedies and that the matter is properly before the court.  (Doc. 55 at 5.)  The court therefore

turns to consider whether McCain has demonstrated extraordinary and compelling reasons that warrant a reduction in his sentence.

### C. Extraordinary and Compelling Reasons

McCain argues that three extraordinary and compelling reasons justify early release. First, he argues "his current term of imprisonment exceeds the guideline range he would have faced at sentencing had the current state of law been in effect then." (Doc. 52 at 5.) Second, he cites his post-sentencing rehabilitative efforts. (Id. at 8-11). And third, he notes his medical conditions, combined with the COVID-19 pandemic. (Id. at 11-12.) McCain specifically asks for a reduction of sentence to "235 months." (Id. at 13.)

### 1. Post-First Step Act Sentencing Disparity

McCain first contends that he is entitled to compassionate release because if he were sentenced today, his guideline range would be lower than when he was sentenced in 2006. (Doc. 52 at 5; see also Doc. 57 at 2-3.) The Government does not contest that this can, sometimes, constitute an extraordinary and compelling reason justifying a sentence reduction. (Doc. 55 at 8-9.) See U.S.S.G. § 1B1.13(b)(6); United States v. Arey, 461 F. Supp. 3d 343, 350 (W.D. Va. 2020) ("The fact that if [the defendant] were sentenced today for the same conduct he would likely receive a dramatically lower sentence than the one he is currently serving constitutes an 'extraordinary and compelling' reason justifying

8

potential sentence reduction under § 3582(c)(1)(A).").

On May 31, 2006, a federal grand jury charged McCain in a single-count indictment with possession with intent to distribute 65 grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). (Doc. 1.) On August 11, 2006, the Government filed an information of prior conviction under 21 U.S.C. § 851(a) notifying McCain that, pursuant to 21 U.S.C. § 841(b)(1)(A), it intended to seek a sentencing enhancement based on one of McCain's prior felony drug offenses. (Doc. 9.) The prior felony drug offense was McCain's 1993 conviction for sale of cocaine in violation of North Carolina General Statute § 90-95. (See id. (identifying "Criminal Docket Number 92CRS3224, on April 1, 1993, in the Superior Court Division in and for Rockingham County, North Carolina").) For that conviction, McCain received a sentence of ten years' imprisonment in a consolidated judgment that included one other conviction as well (case No. 93-CRS-1922), also a felony drug offense for sale of cocaine. (See Doc. 31-1 ¶ 34; Doc. 59 at 4.) On September 8, 2006, McCain pleaded guilty to the one-count indictment. (Doc. 13.)

In advance of sentencing, the probation office prepared a presentence report ("PSR") in which it calculated McCain's adjusted offense level, after grouping, to be 34. (Doc. 31-1 ¶ 18.) Because McCain was deemed a career offender under the guidelines due to seven prior drug trafficking convictions, a

9

conviction for manufacturing cocaine, and a conviction for felony assault with a deadly weapon with intent to kill, his adjusted offense level was 37. (Id. ¶ 19.) Three levels were reduced for acceptance of responsibility, for a total offense level of 34. (Id. ¶ 20-21.) The amount of drugs attributable to McCain and the Government's filing of an information of prior conviction under 21 U.S.C. § 851(a) also increased the potential statutory term of imprisonment from not less than 10 years to life, to not less than 20 years to life. (See id. ¶ 70); see 21 U.S.C. § 841(b)(1)(A) (2006). With a combined criminal history category of VI, the resulting guideline range was 262 to 327 months of imprisonment and 10 years of supervised release. (Doc. 31-1 at 26.) In December 2006, the court imposed a guideline sentence of 288 months of imprisonment followed by ten years of supervised release. (Doc. 20.)

Several years after McCain was sentenced, Congress passed the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010), which aimed to reduce the sentencing disparities between cocaine offenses and crack cocaine offenses by increasing the crack offense drug weight thresholds. See United States v. Wirsing, 943 F.3d 175, 178-79 (4th Cir. 2019). But the Fair Sentencing Act was not retroactive and therefore did not provide relief to McCain. See United States v. Black, 737 F.3d 280, 285 (4th Cir. 2013). McCain's eligibly for relief changed, however, when Congress

10

enacted the First Step Act, which made certain provisions of the Fair Sentencing Act retroactive. See First Step Act of 2018, Pub. L. No. 115-391, § 401, 132 Stat. 5194, at 5220-21.

Pertinent here, Section 401 of the First Step Act altered the scope of the statutory mandatory minimum penalties imposed pursuant to 21 U.S.C. § 841(b)(1)(A) and (B). See id. McCain correctly points out that, under this amendment, offenses (like his) involving between 28 and 280 grams of crack cocaine are now punished by five to forty years of imprisonment under § 841(b)(1)(B), not (as when he was sentenced) ten years to life imprisonment under § 841(b)(1)(A). See United States v. Thomas, 32 F.4th 420, 425 (4th Cir. 2022). McCain is also correct that this amendment reduced the mandatory minimum penalties in § 841(b)(1)(A) and (B) for those defendants with prior qualifying convictions for certain felony drug offenses. For a defendant with only one qualifying prior conviction, the mandatory minimum term of imprisonment for those previously convicted under § 841(a)(1)(A) for possessing at least 50 grams of cocaine base ("crack") was effectively reduced from twenty years to ten years. Compare 21 U.S.C. § 841(b)(1)(B)(iii) (2018) with 21 U.S.C. § 841(b)(1)(A)(iii) (2006). As part of these changes, the First Step Act also modified the criteria for qualifying prior offenses by replacing the term "felony drug offense" with the newly-defined terms "serious drug felony" and "serious violent felony." First

11

Step Act of 2018, Pub. L. No. 115-391, § 401(a)(1), 132 Stat. at 5220; 21 U.S.C. § 841(b)(1)(A), (B); 21 U.S.C. § 802(57-58); see also United States v. Skaggs, 23 F.4th 342, 343 (4th Cir. 2022), cert. denied, 142 S. Ct. 1698 (2022).

Here, McCain contends that his prior conviction for sale of cocaine in violation of North Carolina General Statute § 90-95 (in case no. 92-CRS-3224) would not qualify as a "serious drug felony" for purposes of enhancement under 21 U.S.C. § 841(b)(1)(A) and (B) and § 851. (See Doc. 52 at 7.) This matters, McCain argues, because without the § 851(a)(1) enhancement, his statutory sentencing range today would be 5 to 40 years in prison, not, as was true at sentencing, 20 years to life in prison. (See id. at 7-8; see 18 U.S.C. § 841(a)(1)(B) (2018) (prescribing, for defendants with no qualifying prior convictions, a term of imprisonment between 5 to 40 years in prison).) With a 40-year maximum statutory sentence, his career offender offense level would fall from 37 to 34. U.S.S.G. § 4B1.1(b). And after deducting 3 more levels for acceptance of responsibility, his total offense level would fall to 31. The resulting guideline range would thus be 188 to 235 months in prison, not, as when McCain was sentenced, 262 to 327 months. (Doc. 52 at 8.) Such a significant disparity, McCain concludes, amounts to an extraordinary and compelling reason for early release.

In response, the Government maintains that McCain's guideline

range is unchanged because his 1993 conviction for sale of cocaine – again, the conviction the Government used to enhance his sentence under 21 U.S.C. § 851(a)(1), in case no. 92-CRS-3224 – constitutes a "serious drug felony" even under the First Step Act. (Doc. 55 at 7-8; see Doc. 9 (specifying McCain's previous conviction for "sale of cocaine, under Criminal Docket Number 92-CRS-3224, on April 1, 1993").) The Government also points out that when McCain sought relief directly under the First Step Act in early 2019 (Doc. 35), neither the probation office nor his then-counsel identified any problem with this prior conviction. The probation office, for its part, concluded that "McCain's guideline range had not changed." (Doc. 55 at 8 (citing Doc. 38).) Similarly, "McCain, through his counsel, admitted that the prior drug conviction for which the government gave notice was proper." (Id. (citing Doc. 41 at 3).)

As the foregoing indicates, the parties' competing positions turn on whether McCain's 1993 conviction for the sale of cocaine constitutes a "serious drug felony" for purposes of sentencing enhancement under 21 U.S.C. § 841(b)(1)(A) and (B), as amended by the First Step Act. The First Step Act does not define the term "serious drug felony," but instead points to 18 U.S.C. § 924(e)(2) of the Armed Career Criminal Act, as well 21 U.S.C. § 802(57).[2]

_____

[2] McCain does not dispute that his prior conviction meets the requirements

Pertinent here, § 924(e)(2)(A)(ii) defines a "serious drug offense" as including "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . <u>for which a maximum term of imprisonment of ten years or more is prescribed by law</u>." 18 U.S.C. § 924(e)(2)(A)(ii) (emphasis added). The parties' sole point of contention is whether McCain's prior conviction for sale of cocaine (in case no. 92-CRS-3224) was punishable by "a maximum term of imprisonment of ten years or more." (<u>Compare</u> Doc. 52 at 7 <u>with</u> Doc. 55 at 7-8.)

At the time of McCain's 1993 conviction (Doc. 9), North Carolina courts sentenced criminal defendants pursuant to the North Carolina Fair Sentencing Act ("NCFSA"). <u>See</u> N.C. Gen. Stat. § 15A-1340.4 (1983) (repealed effective Oct. 1, 1994); <u>Albritton v. United States</u>, No. 4:12-CR-00005-F-1, 2016 WL 2932165, at *4 n.2 (E.D.N.C. May 19, 2016) ("North Carolina's Fair Sentencing Act was in effect for offenses committed from July 1, 1981 to September 30, 1994.").[3] The NCFSA grouped felonies into different classes

_____

of 21 U.S.C. § 802(57) — that is, that the prior offense is one for which "the offender served a term of imprisonment of more than 12 months[,]" and that the term of imprisonment ended within 15 years of the commencement of the new offense. <u>See</u> <u>id.</u>; <u>Skaggs</u>, 23 F.4th at 343 (explaining that a "serious drug felony" under the First Step Act, in addition to meeting the requirements described in 18 U.S.C. § 924(e), must also meet the "two requirements" of 21 U.S.C. § 802(57)).

[3] As the judgment indicates, McCain committed the relevant offense on December 9, 1991. (Doc. 59 at 4.)

14

and assigned each class a baseline, "presumptive" term of imprisonment. See N.C. Gen. Stat. § 15A-1340.4 (1983) (repealed effective Oct. 1, 1994). The statute also set a maximum, aggravated term of imprisonment for each offense class. See id. § 14-1.1 (1981) (repealed effective Oct. 1, 1994). By law, the sentencing judge could only depart from the presumptive term by finding and recording aggravating or mitigating factors. Id. § 15A-1340.4(b); see, e.g., State v. Jones, 306 S.E.2d 451, 453 (N.C. 1983). Under the NCFSA, McCain's conviction for sale of cocaine in violation of N.C. Gen. Stat. § 90-95 was a Class H felony, which carried with it a presumptive penalty of three years imprisonment and a maximum aggravated penalty of ten years imprisonment. (Doc. 59 at 4-5.) See State v. Lawrence, 667 S.E.2d 262, 264 (N.C. Ct. App. 2008) ("Under the Fair Sentencing Act, a Class H felony carried a maximum punishment of ten years, with a presumptive term of three years."); State v. Artis, 91 N.C. App. 604, 609, 372 S.E.2d 905, 908 (N.C. Ct. App. 1988) ("Conviction for the sale of cocaine is a Class H felony which has a presumptive term of three years.").

As both the judgment (Doc. 59 at 4-5) and the PSR (Doc. 31-1 ¶ 29, 34) indicate, McCain was sentenced to ten years for 2 offenses consolidated in a single judgment (case no. 92-CRS-3224

15

and case no. 93-CRS-1922).[4]  Rather than specifying the sentences for each offense, however, the judgment ordered that both "offenses be consolidated[,]" and that McCain "be imprisoned for a term of Ten (10) years."  (Doc. 59 at 4.)  The sentencing judge found as an aggravating factor that McCain "ha[d] a prior conviction or convictions for criminal offenses punishable by more than 60 days confinement[,]"  (Doc. 59 at 5), but did not specify which offense was "aggravated" (between case no. 92-CRS-3224 and case no. 93-CRS-1922) for purposes of sentencing.

The Government's argument here is simple enough: because McCain was "actually sentenced to 10 years of imprisonment" in case no. 92-CRS-3224 (Doc. 55 at 8), a "maximum term of imprisonment of ten years or more is prescribed by law."  18 U.S.C. § 924(e)(2)(A)(ii).  It does not acknowledge, however, that McCain received a single ten-year sentence on two different charges in a consolidated judgment.

McCain resists this ostensibly straightforward result by pointing to the Fourth Circuit's decision in <u>United States v. Newbold</u>, 791 F.3d 455, 461 (4th Cir. 2015).  In <u>Newbold</u>, the court considered whether the defendant's 1984 conviction for possession with intent to sell and deliver a controlled substance offense in

---

[4] As noted, only the conviction "under Criminal Docket Number 92CRS3224" was used to enhance McCain's sentence pursuant to 21 U.S.C. § 851(a)(1). (<u>See</u> Doc. 9.)

violation of North Carolina law constituted a "serious drug offense" for purposes of § 18 U.S.C. § 924(e)(2)(A). Id. at 459-63.[5] There, as here, the defendant's predicate conviction was a Class H felony, which the North Carolina legislature assigned a "presumptive term of three years, and a maximum aggravated penalty of ten years; that is, the law established an aggravated range, above the presumptive term, of three to ten years." Newbold, 791 F.3d at 463. Applying its previous decision in United States v. Simmons, 649 F.3d 237 (4th Cir.2011) (en banc), the court explained that the "controlling inquiry" is "not what sentence [the defendant] actually received for [the drug offense]," but is instead "the maximum penalty that [the defendant] potentially faced given his particular offense and his particular history[,]" an analysis which "requires examination of the defendant's offense class and the applicability of the aggravated sentencing range." Newbold, 791 F.3d at 462 (internal quotations omitted). The court thus looked to the presumptive sentence that the offense carried and whether the defendant's state court judgment had "aggravating factors supporting a sentence within the aggravated range," that is, a sentence above the presumptive sentence. Id. at 463. Because the judgment did not state any aggravating factors found by the sentencing judge, and there was no evidence found in the

---

[5] As noted, the First Step Act's definition of "serious drug felony" incorporates 18 U.S.C. § 924(e)(2)(A). See Skaggs, 23 F.4th at 343.

Case 1:06-cr-00203-TDS   Document 60   Filed 11/08/23   Page 17 of 30

plea transcript to support an admission of aggravating factors, the court held that Newbold's conviction did not qualify as a "serious drug offense" because he could not have received ten years of imprisonment for the offense. Id. at 461-63.[6]

McCain argues, in essence, that the same result applies here. He does acknowledge, however, that this conclusion is complicated by one fact; namely that here, unlike in Newbold, the consolidated judgment does list an aggravating factor found by the sentencing judge (the implication being that the maximum punishment he faced in case no. 92-CRS-3224, even under Newbold's logic, was in fact ten years). (Doc. 59 at 4.) As noted, the judgment shows that the sentencing judge found as an aggravating factor that the "defendant ha[d] a prior conviction or convictions for criminal offenses punishable by more than 60 days confinement." (Id. at 5.)

McCain's response to this, however, is that "the aggravating factor mentioned in the judgment is not applicable to the conviction in question in this case[,]" because that conviction – again, in case no. 92-CRS-3244 - was his "first offense." (Id. at 2.) Accordingly, the aggravating factor – which specifically identified recidivism as the reason for the enhancement - could

---

[6] In so holding, the court emphasized that Simmons, 649 F.3d at 241, overruled the portions of United States v. Harp, 406 F.3d 242 (4th Cir. 2005), requiring courts to examine only "the maximum aggravated sentence that could be imposed for th[e] crime upon a defendant with the worst possible criminal history." Id. at 246.

only have been applied to enhance the maximum sentence he faced in case no. 93-CRS-1922. (Id. at 2.) As McCain explains, "[t]his means that case number 93-CRS-1922 was punishable by the maximum term of ten years but case number 92-CRS-3224 [the relevant conviction here] was only punishable by the presumptive term of three years since it lacked any aggravating factors." (Id. at 2.) And if this is true, he contends, "under current law it would not count as a § 851 offense[,]" and he "would face a lower guideline range if he were sentenced today and had the same offense and criminal history." (Id. at 3.)

McCain's argument, while creative, rests on a mistaken premise; namely, that the aggravating enhancement imposed in the consolidated judgment could not have applied to case no. 92-CRS-3224, the relevant conviction. To the contrary, the PSR makes clear that McCain had at least one prior conviction "punishable by more than 60 days confinement": in October 1991, McCain pled guilty to misdemeanor assault with a deadly weapon and was sentenced to 2 years' imprisonment. (Doc. 31-1 ¶ 28.) Accordingly, either offense in the 1993 consolidated judgment, or perhaps both, could have been "aggravated" due to McCain's having already been convicted for an offense "punishable by more than 60 days confinement." See State v. Thompson, 307 S.E.2d 156, 158 (N.C. 1983) (noting that under to the Fair Sentencing Act, it is an aggravating factor for the defendant to have a "prior conviction

19

or convictions for criminal offenses punishable by more than 60 days confinement" (quoting N.C. Gen. Stat. § 15A-1340.4(a)(1)o (repealed effective Oct. 1, 1994))). Either way, in contrast to Newbold itself, the state court judgment here doubtlessly contains an "aggravating factor supporting a sentence within the aggravated range[.]" Newbold, 791 F.3d at 463. And for purposes of determining whether a prior conviction constitutes a "serious drug felony" under 18 U.S.C. § 924(e)(2)(A), this is all that Newbold demands; that is, consideration of "the maximum penalty that [the defendant] potentially faced given his particular offense and his particular criminal history." Newbold, 791 F.3d at 462 (emphasis added). In other words, because the sentencing judge found as an aggravating factor that McCain had a prior conviction punishable by more than 60 days' imprisonment, the maximum penalty he faced in case no. 92-CRS-3224, "given his particular offense" and "his particular criminal history," was ten years. Id. Accordingly, even under the First Step Act, McCain's prior conviction in case no. 92-CR-3224 would qualify as a "serious drug felony," and therefore his guideline range would remain unchanged.

Furthermore, even assuming McCain is right, the Sentencing Guidelines merely indicate that situations involving disparate sentences due to a change in law "may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity

20

between the sentence being served and the sentence likely to be imposed at the time the motion is filed, _and after full consideration of the defendant's individualized circumstances_." U.S.S.G. § 1B1.13(b)(6) (emphasis added). Therefore, even assuming McCain's guideline range would have changed, the court must still decide whether to reduce the Defendant's sentence based on a "full consideration" of McCain's "individual circumstances" and is not "required[d] . . . to reduce a defendant's sentence once the defendant shows that new statutory or case law would have benefitted the defendant, if such law had existed at the time of the defendant's sentencing." _United States v. Spencer_, 521 F. Supp. 3d 606, 610 (E.D. Va. 2021), _aff'd_, 853 F. App'x 833 (4th Cir. 2021) (quoting _McCoy_, 891 F.3d at 286); _see also United States v. Melton_, No. 7:08CR00017-001, 2022 WL 72479, at *2 (W.D. Va. Jan. 3, 2022) ("A sentencing disparity alone is not enough to warrant reducing Melton's sentence.").

Here, McCain has failed to make such a showing. At the time of his conviction, McCain was 32 years old, far from being a young first-offender. Indeed, as noted below with respect to the sentencing factors, by the time of this conviction, he had been convicted of misdemeanor hit and run, resisting an officer, misdemeanor assault and battery (twice), misdemeanor assault with a deadly weapon (shooting victim in the leg), felony possession with intent to sell and deliver cocaine (four times), felony sale

of cocaine (three times), felony manufacture cocaine, misdemeanor carrying a concealed weapon (9mm pistol), misdemeanor trespass, non-support of an illegitimate child, misdemeanor assault inflicting serious injury (striking victim in the mouth with a pistol), misdemeanor assault, felony discharge of a firearm into occupied property (shooting into apartment in gang-related incident), felony assault with a deadly weapon with intent to kill (shooting at victim with 12-gauge shotgun and .380 pistol), felony possession of cocaine, felony conspiracy to possess cocaine, felony maintaining vehicle to keep a controlled substance, and felony habitual felon. (Doc. 31-1 ¶¶ 23-41.) He also had multiple arrests related to other felonies, several violent. (Id. ¶¶ 47-56.) McCain had already been sentenced to more than 400 months of imprisonment, and while he served less than that under North Carolina's then-applicable law, those sentences failed to deter his criminal conduct in this case. Needless to say, McCain fails to demonstrate that his particular circumstances could remotely be considered supportive of a reduction in sentence.

### 2. Post-Sentencing Rehabilitative Conduct

McCain's second argument is that his post-sentencing rehabilitative conduct, including his lack of disciplinary record in prison, also constitutes and extraordinary and compelling reason for early release. (Doc. 52 at 8-11.) McCain's level of rehabilitation is certainly commendable, as deciding to live a

22

law-abiding life is the goal for all, including those convicted of criminal activity. But § 1B1.13 makes clear that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13(d). Therefore, pursuant to 28 U.S.C. § 994(t) and § 1B1.13(d), McCain's rehabilitation while incarcerated is not an extraordinary and compelling reason warranting compassionate release. See United States v. Degante, No. 4:17-CR-00075, 2022 WL 2813716, at *4 (E.D. Tex. July 18, 2022) (denying motion in part because a defendant's "[r]ehabilitation alone cannot support a claim for sentence reduction"); United States v. Hayes, No. ELH-11-258, 2022 WL 2531538, at *18 (D. Md. July 6, 2022) (denying motion because, while "[d]efendant's rehabilitative efforts are laudable," his rehabilitation was insufficient to warrant compassionate release). This is so even when considered in connection with all his other grounds. See United States v. Davis, No. 21-6960, 2022 WL 127900, at *1 (4th Cir. Jan. 13, 2022) (per curiam) (unpublished) (admonishing district courts to "consider the actual details of [the defendant's] rehabilitation in combination with the other circumstances.")

### 3. COVID-19 and Defendant's Health Conditions

The final basis for McCain's request for compassionate release is his general risk of exposure to COVID-19 while in custody and his belief that he is at heightened risk because he is

23

obese. (Doc. 52 at 11-12.) To be sure, a generalized fear of contracting COVID-19 does not constitute an extraordinary and compelling reason for compassionate release. See United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."); United States v. Banks, Nos. 1:12cr193-1 and 1:16cr61-1, 2020 WL 6568607, at *2 (M.D.N.C. Oct. 7, 2020). And while McCain's obesity does put him at an increased risk of COVID-19, even in conjunction with other health concerns, it does not rise to the level of being extraordinary and compelling. See, e.g., United States v. Soto-Mendoza, No. CR 11-2628-TUC-CKJ, 2022 WL 2532286, at *3 (D. Ariz. July 7, 2022) (declaring that prevalence of obese and overweight prisoners is too common to be extraordinary); United States v. Parnell, Crim. No. 12-418-6, 2021 WL 148519, at *4 (E.D. Pa. Jan 15, 2021) ("[Defendant]'s medical conditions, including obesity, bronchial asthma, hypertension, and pre-diabetes, do not present extraordinary and compelling reasons for his release."); United States v. Rice, Crim. No. 17-128 (JEB), 2020 WL 6887790, at *2 (D.D.C. Nov. 24, 2020) (finding that defendant's well-controlled asthma and BMI of 39.45 did not constitute extraordinary and compelling reasons for release); United States v. Newton, No. 3:18-CR-0022-8(VLB), 2020 WL 6784267, at *6 (D. Conn. Nov. 18, 2020) ("[Defendant]'s obesity and

24

controlled asthma does not establish[] 'extraordinary and compelling' reasons for his release."); <u>United States v. Wax</u>, Crim. No. 14-251, 2020 WL 3468219, at *3 (D.N.J. June 25, 2020) (where the BOP was "adequately managing Defendant's medical care," his hypertension and obesity did not require compassionate release).

A review of McCain's medical records does not support his contention that his current condition rises to the level of being extraordinary and compelling. Importantly, McCain has been vaccinated for COVID-19 (Doc. 55 at 10, Doc. 55-2 at 1), which has been shown to significantly reduce the risk of serious illness or death resulting from that virus. <u>See</u> <u>United States v. Singh</u>, 525 F. Supp. 3d 543, 547 (M.D. Pa. 2021) (denying motion for compassionate release because "the Court concludes that Singh's recent vaccination mitigates his risk from COVID-19 to such an extent that COVID-19, in combination with Singh's underlying conditions, no longer presents an extraordinary and compelling reason to grant compassionate release"); <u>United States v. Brown</u>, No. 7:13-CR-44-FL-1, 2021 WL 2481676, at *2 (E.D.N.C. June 17, 2021) ("[T]he court agrees with the growing consensus of district courts that, in general, defendants who have received a highly effective COVID-19 vaccine cannot establish extraordinary and compelling reasons for release based on concerns about contracting COVID-19."); <u>United States v. Johnson</u>, No. 2:14-CR-00127-ALM-12, 2021 WL 3173346, at *3 (S.D. Ohio July 27, 2021) (acknowledging

Case 1:06-cr-00203-TDS   Document 60   Filed 11/08/23   Page 25 of 30

scientific consensus regarding vaccine efficacy and denying compassionate release to fully vaccinated defendant).

McCain's risk from COVID-19 is especially low at FCI Beckley, where he is incarcerated, as it currently reports zero active cases of COVID-19 among its staff and inmates. See Inmate COVID-19 Data, Federal Bureau of Prisons, https://www.bop.gov/about/statistics/ statistics_inmate_covid19.jsp (last updated November 6, 2023). His medical records also note that he previously contracted Covid-19 in January of 2022 and was asymptomatic. (Doc. 56 at 24; Doc. 55 at 10.)

As McCain's medical conditions are being well managed by the BOP, he has been vaccinated against COVID-19, and his prior Covid-19 illness was asymptomatic, the court finds that he has not demonstrated extraordinary and compelling reasons for compassionate release.

### D. Section 3553(a) Factors

Finally, even if extraordinary and compelling reasons existed, early release would not be appropriate in this case in light of the § 3553(a) factors. See United States v. Kibble, 992 F.3d 326, 331 (4th Cir. 2021) ("[A] district court may not grant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) without considering the factors set forth in section 3553(a) to the extent that they are applicable." (internal quotation marks omitted)).

26

Section 3553(a) requires a court to impose a sentence that is "sufficient, but not greater than necessary" to comply with the statutory purposes of sentencing.  18 U.S.C. § 3553(a).  The court must consider –—

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the need for the sentence imposed –

(A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)  to afford adequate deterrence to criminal conduct;

(C)  to protect the public from further crimes of the defendant; and

(D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)  the kinds of sentences available;

(4)  the kinds of sentence[s] and the sentencing range established for [the applicable offense category as set forth in the guidelines] . . .;

(5)  any pertinent policy statement . . . by the Sentencing Commission . . .;

(6)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)  the need to provide restitution to any victims of the offense.

Id.  These factors weigh heavily against McCain's release.

While McCain has shown evidence of rehabilitation, including

27

work records with no disciplinary remarks while incarcerated, his rehabilitation does not outweigh the other factors under § 3553(a). First, the nature and circumstances of the offense are serious and weigh against compassionate release. As the PSR indicates, McCain was apprehended by officers of the Rockingham County Sheriff's Department during the execution of a search warrant at his residence. (Doc. 31-1 ¶ 4-5.) When he was arrested, McCain had 62.2 grams of crack cocaine in a baggie in his coat pocket. (Id. ¶ 7). The officers also located $5,079 in the residence, which he admitted he earned selling drugs. (Id. ¶ 7-8.) Officers also discovered a box of .38 special ammunition, along with other contraband. (Id. at 7.)

The court also considers McCain's history, which is details a life of drug-related convictions and violent crimes. As early as age 17, McCain pleaded guilty to misdemeanor assault with a deadly weapon after he shot a victim in the leg. (Doc. 31-1 ¶ 28.) He later committed other violent misdemeanors, including misdemeanor assault inflicting serious injury after he struck a victim in the mouth with a pistol (id. ¶ 35) and misdemeanor simple assault after beating a victim repeatedly in the face, requiring stitches to close the wound (id. ¶ 36). He also has multiple prior felony convictions reflecting a lifetime of illegal cocaine and firearm activity: felony sale of cocaine (id. ¶¶ 29, 30, 34); felony discharge of a firearm into occupied property in a gang-

28

related confrontation and felony assault with a deadly weapon with intent to kill (id. ¶ 37); felony possession of cocaine, felony conspiracy to possess cocaine, and felony maintaining a vehicle to keep a controlled substance (id. ¶ 39); felony possession with intent to sell and deliver cocaine (id. ¶ 40); and felony possession with intent to sell and deliver cocaine and felony habitual felon (id. ¶ 41). In short, McCain has been engaged in criminal conduct since 1990, and his interactions with the judicial system have failed to deter him. The low end of all of all of his criminal sentences combined exceeds 400 months. (Doc. 31-1 ¶¶ 23-41.) Although he may have actually served less than that, his several years of imprisonment for his past crimes did not deter him from continuing his similar criminal conduct each time he was released. To be sure, his post-conviction mitigating conduct, which the court considers, is encouraging. Yet his history does not support his compassionate release. The need for the sentence to promote respect for the law, just punishment, deterrence, and protection of the public from recurrent criminal conduct all weigh heavily against release.

In sum, considering all the facts and circumstances supporting McCain's motion, including his arguments in the context of COVID-19, as McCoy demands, the court finds that McCain fails to demonstrate extraordinary and compelling reasons to grant his compassionate release. Alternatively, even if his arguments were

29

to constitute extraordinary and compelling reasons, the sentencing factors weigh heavily against release.

**III. CONCLUSION**

For the reasons stated,

IT IS THEREFORE ORDERED that McCain's motion for compassionate release (Doc. 52), as supplemented, is DENIED.

/s/   Thomas D. Schroeder
United States District Judge

November 8, 2023